IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CLARK MOTOR COMPANY, INC.  :
ROBERT W. CLARK, DAVID     :
CLARK                         :
                            :
       Plaintiffs,      :          No. 4:07-CV-856
                            :
    v.                :         (Judge McClure)
                            :
MANUFACTURERS AND     :
TRADERS TRUST, CO.,      :
                            :
                            :
       Defendant.     :

**M E M O R A N D U M**

July 26, 2007

**BACKGROUND:**

On May 10, 2007, plaintiffs, Clark Motor Company, Inc. ("Clark Motor"),

Robert W. Clark, and David Clark, instituted this civil action against defendant,

Manufacturers and Traders Trust Co. ("M&T").  In their complaint, plaintiffs seek

recovery for breach of contract (Count I), negligent misrepresentation (Count II),

negligence (Count III), breach of fiduciary duty (Count IV), and aiding and

abetting breach of fiduciary duty (Count V).

On May 31, 2007, defendant filed a "Motion to Dismiss or for Summary

1

Judgment." (Rec. Doc. No. 9.) Additionally, defendant filed a supporting brief, a statement of undisputed material facts, and a request for a hearing on the motion. (Rec. Doc. Nos. 10-11.) Opposing and reply briefs have been filed. Now, for the following reasons, we will deny defendant's request for a hearing and deny defendant's motion to dismiss or for summary judgment.

**DISCUSSION:**

### I. Defendant's Motion for Summary Judgment and Request for a Hearing

Defendant's motion is entitled "Motion to Dismiss or for Summary Judgment." (Rec. Doc. No. 9.) After reviewing the motion, it appears that defendant argues that each claim in the complaint fails to state a claim upon which relief can be granted, but also argues that there exist no disputed material facts with respect to some of the claims and that summary judgment is appropriate in the event we find that plaintiffs have failed to state a claim for relief. To the extent defendant seeks summary judgment and relies on matters outside the pleadings, we find the motion premature. The parties have yet to begin discovery and it is unfair for plaintiffs to be "railroaded" by a motion for summary judgment when they may have not had the opportunity to discover evidence essential to opposing the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986) (noting that "[a]ny potential

problem with [premature summary judgment motions] can be adequately dealt with under Rule 56(f), which allows a summary judgment motion to be denied, or the hearing on the motion to be continued, if the nonmoving party has not had an opportunity to make full discovery"). Therefore, we will deny defendant's motion to the extent it seeks summary judgment and relies on matters outside the pleadings and will only consider the motion to dismiss aspect of defendant's motion.

Additionally, defendant has filed a "Request for Hearing" on its motion to dismiss or for summary judgment. (Rec. Doc. No. 11.) In light of the fact that we are refusing to consider the summary judgment aspect of defendant's motion and will not be considering any evidence while resolving defendant's motion, we will deny defendant's request for a hearing.

## II.  Motion to Dismiss Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must view all allegations stated in the complaint as true and construe all inferences in the light most favorable to plaintiff. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In ruling on a motion to dismiss, the court primarily considers the allegations of the pleading, but is not required to consider legal conclusions alleged in the complaint. Kost, 1 F.3d at 183. At the motion to dismiss stage, the court

considers whether plaintiff is entitled to offer evidence to support the allegations in the complaint.  Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000).  A complaint should be dismissed only if the court, from evaluating the allegations in the complaint, is certain that under any set of facts relief cannot be granted. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Markowitz v. Northeast Land, Co., 906 F.2d 100, 103 (3d Cir. 1994).

The failure-to-state-a-claim standard of Rule 12(b)(6) "streamlines litigation by dispensing with needless discovery and factfinding."  Neitzke v. Williams, 490 U.S. 319, 326-27 (1989).  A court may dismiss a claim under Rule 12(b)(6) where there is a "dispositive issue of law."  Id. at 326.  If it is beyond a doubt that the non-moving party can prove no set of facts in support of its allegations, then a claim must be dismissed "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."  Id. at 327.

### III.  Statement of Factual Allegations

The following allegations are taken from the plaintiff's complaint.  Plaintiff Clark Motor is a family-owned automobile dealership which sells both new and used automobiles.  (Rec. Doc. No. 1, ¶¶ 7-8.)  Plaintiff Robert Clark is the president and majority owner of Clark Motor.  (Id. ¶ 2.)  Plaintiff David Clark is

4

the vice-president and minority owner.  (Id. ¶ 3.)  Defendant M&T is a bank that

provides financing to automobile dealerships.  (Id. ¶¶ 4, 9.)

In order to purchase and maintain its inventory of automobiles, Clark Motor

obtained floor plan financing from M & T beginning on June 12, 2003, the date the

parties entered into a loan agreement.  (Id. ¶¶ 8-9.)  Under the agreement, Clark

Motor would purchase automobiles by borrowing money from M & T, who would

charge interest on the loan and then be repaid when Clark Motor sold the

automobile.  (Id. ¶ 8.)  Additionally as a requirement to obtain the financing, M &

T required the personal guarantee of plaintiff Robert Clark.  (Id. ¶ 11.)

In 2001, Clark Motor hired Sally Smith for the position of office manager.

(Id. ¶ 14.)  She was responsible for maintaining financial statements, recording and

maintaining inventory, and ensuring that payment for sold automobiles was made

back to M & T.  (Id.)  In 2005, Smith began falsifying inventory and financial

records in order to take money for her personal use.  (Id. ¶ 15.)  Specifically, Smith

would inflate the number of automobiles purchased so that M & T would provide

financing for automobiles that Clark Motor never actually received.  (Id. ¶ 17.)

Plaintiffs allege that on December 19, 2006, after uncovering that it had

issued floor plan financing in excess of the plan limits set out in the 2003 loan

agreement, M & T required Clark Motor to execute a new loan agreement for the

financing it was providing.  (<u>Id.</u> ¶ 19.)  Clark Motor executed the agreement and plaintiff Robert Clark once again gave a personal guarantee.  (<u>Id.</u> ¶ 20.)  The main difference in the new agreement was that it provided for a substantially increased line of credit.  (<u>Id.</u> ¶ 21.)

On January 12, 2007, M & T first inquired about the increase in Clark Motor's inventory.  (<u>Id.</u> ¶ 22.)  Plaintiffs allege that this was the first time they realized that there were irregularities within their records.  (<u>Id.</u>)  On approximately January 22, 2007, M & T  provided plaintiffs Robert and David Clark with a complete listing of loans that M & T had made to Clark Motor for 2006 and plaintiffs realized that defendant had funded them for more than three-hundred automobiles that they had never owned.  (<u>Id.</u> ¶¶ 23-25.)  Plaintiffs then confronted Smith, who admitted she had manipulated records so that M & T would provide additional funds which she took for her own personal use.  (<u>Id.</u> ¶¶ 25-26.)  Smith was terminated from her employment the same day.  (<u>Id.</u> ¶ 27.)

Plaintiffs allege that in violation of standard banking protocols and the 2003 and 2006 loan agreements, M & T provided financing for more than three-hundred automobiles without verifying collateral or receiving any documentation such as titles or invoices for the vehicles.  (<u>Id.</u> ¶ 28.)  Furthermore, plaintiffs allege that M & T stated to them that all the financing was done by phone without any written

6

requests or documentation and was done under the "honor system."  (Id.  ¶ 29.)

Furthermore, plaintiffs allege that M & T failed to properly conduct floor plan

audits that may have discovered the irregularities, as required by the loan

agreement .  (Id. ¶¶ 30-31, 35.)  M & T also provided financing to Clark Motor in

excess of the limits set out in the loan agreement.  (Id. ¶ 32.)

     As a result of M & T's conduct, plaintiffs allege that their asset value and net

worth have been substantially decreased.  (Id. ¶ 37.)  Furthermore, plaintiffs allege

that plaintiffs Robert and David Clark are personally exposed to the debts and

liabilities of Clark Motor and have had to cash in their retirement savings to

continue operating Clark Motor.  (Id. ¶ 38.)  Furthermore, plaintiffs argue that

Robert and David Clark's interest in Clark Motor has been significantly

diminished.  (Id. ¶ 39.)

## IV.  Defendant's Motion to Dismiss

### A.  Standing of Robert and David Clark to Sue

     Defendant's first argument in its motion to dismiss is that the only injury

that plaintiffs Robert and David Clark have alleged is the loss in value of their

stock interest in Clark Motor and the loss of money they invested in Clark Motor to

fund its operations after the fraud was discovered.  (Rec. Doc. No. 5-7, at 10.)

Therefore, under the derivative injury rule, which states that a shareholder may not

sue for personal injuries that directly result from injuries to the corporation, Robert and David Clark do not have standing to sue.  (Id.)

As a preliminary matter, we note that jurisdiction in this case rests on the diversity of the parties.  28 U.S.C. § 1332(a)(1).  A federal court sitting in diversity must apply the substantive law of the state in which it sits, Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938), including its choice of law rules, Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).  There does not appear to be any dispute that Pennsylvania law applies to this case.

The derivative injury rule states that a shareholder may not sue for personal injures that directly result from injuries to the corporation.  In re Kaplin, 143 F.3d 807, 811-12 (3d Cir. 1998).  This rule applies even if the corporation is a closely-held corporation.  Id.  The rule is premised on recognizing the separate legal existence of a corporation from its shareholders.  Id. at 812.  Therefore, a shareholder must plead injuries that were inflicted upon him individually rather than on the corporation to avoid the derivative injury rule.  Id.

In the instant case, we believe that plaintiffs Robert and David Clark have sufficiently stated a claim that they have been directly injured by defendant's actions.  Plaintiff's complaint alleges that Robert Clark executed a personal guarantee on each of the two loan agreements and has had to confess judgment on

those loans.  (Rec. Doc. No. 1, ¶¶ 11, 20.)  Thus, it is clear that by executing this

personal guarantee and having to confess judgment on the loans, Robert Clark has

alleged injuries inflicted upon him individually.  Similarly, plaintiff's complaint

alleges that both Robert and David Clark "are personally exposed to the debts and

liabilities of the business."  (Id. ¶ 38.)  Although Clark Motor is a corporation and

David Clark is generally protected from liability by this fact, and this allegation

fails to specify precisely how David Clark is personally exposed to the debts of

Clark Motor, we nevertheless find it sufficient to state a claim at the motion to

dismiss stage of the litigation.  Still, we think it is important to note that to the

extent Robert and David Clark plead injuries as a result of their diminished interest

in Clark Motor (i.e. their stock value has decreased), we do not find that this is an

injury imposed on them individually and are barred by the derivative injury rule.

Vincel v. White Motors Corp., 521 F.2d 1113, 1118 (2d Cir. 1975) (noting that

shareholder cannot claim injury by diminution in stock value).  Similarly, to the

extent that Robert and David Clark allege that they have had to cash in retirement

savings in order to operate Clark Motor (i.e. have loaned Clark Motor their own

money), this does not even appear to be an injury at all.  Rather, it appears to be a

personal choice to loan their own money to the corporation.  In other words, we do

not believe a lender has a cause of action against a corporation whose alleged harm

towards the borrower caused the need for the loan to arise.  Nevertheless, because

we find that Robert and David Clark have alleged individual injury, we will deny

defendant's motion to the extent it argues that plaintiffs Robert and David Clark do

not have standing.

B.  Count I - Breach of Contract

Defendant argues that the portions of the loan agreement that plaintiffs

allege were breached were in the contract solely for the benefit of defendant and

therefore can only be enforced or waived by defendant.  (Rec. Doc. No. 5-7, at 11.)

Specifically, defendant argues that the requirement in the contract that certain

documents be presented prior to the borrowing of money is a condition precedent

for the sole benefit of defendant and is not in the contract to protect plaintiffs.  (Id.

at 11-12.)  Similarly, the portion of the loan agreement that gives defendant the

right to audit Clark Motor's inventory is a right given to defendant and is not in the

contract to protect or benefit plaintiffs.  (Id. at 13.)  Therefore, these conditions

precedent could be waived by defendant and cannot form the basis of a breach of

contract action by plaintiffs.  (Id. at 11-13.)  Finally, with respect to plaintiff's

allegation of a breach of the covenant of good faith and fair dealing, defendant

argues that the covenant is not applicable to the instant case.  (Id. at 14.)

To make out a cause of action for breach of contract under Pennsylvania

law, the following three elements must be proven: (1) the existence of a contract to which plaintiff and defendant were parties, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) damages resulting from the breach.  Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003).

First, we note that defendant does not address plaintiffs' claim that defendant breached the loan agreement by lending more than the limits set out in the loan agreement.  Therefore, because plaintiffs have clearly alleged that defendant breached this portion of the contract, this alone provides the basis to deny defendant's motion to dismiss to the extent it seeks to dismiss the breach of contract count.

Second, to the extent that defendant argues that the alleged failure to request that certain documents be presented prior to the borrowing of money and the alleged failure to properly audit are conditions precedent solely for the benefit of defendant, we do not agree.  It is true that if a contract provision is inserted solely for the benefit of one party, only that party may enforce the provision.  Macdonald v. Winfield Corp., 93 F.Supp. 153, 158-59 (D.Pa. 1950).  Yet, in the instant case, we do not believe that the document production and audit requirements were intended solely for the benefit of defendant.  Defendant does not point to any case law which holds that such provisions solely benefit the lender.  Similarly, the

contract does not specify that these provisions solely benefit the lender, which is a

provision that could have easily been placed into the contract.  Rather, common

sense dictates that these provisions could benefit both parties.  For example, the

document production and audit requirements would protect the borrower from the

exact conduct that plaintiffs allege occurred in the instant case, and would enable a

borrower to rely on a lender's audits rather than conduct its own, which

undoubtedly benefits plaintiffs.

Finally, as to defendant's argument that the covenant of good faith and fair

dealing is not applicable to the instant case, we also disagree.  Defendant argues

that "[a]bsent specific provisions in a contract or a special relationship (such as that

of an insurance broker or fiduciary), Pennsylvania does not recognize an

independent and separate duty of good faith in commercial transactions."  (Rec.

Doc. No. 5-7. at 14.)  As plaintiffs correctly point out, defendant made this same

argument in a previous case in the Eastern District of Pennsylvania and the court

found that the Pennsylvania Supreme Court had not explicitly ruled on the issue of

whether the there is a duty of good faith and fair dealing in the lender-borrower

relationship.  Bedrock Stone & Stuff, Inc. v. Manufacturers Traders Trust Co.,

2005 WL 1279148, at * 6-7 (E.D.Pa 2005) (Gardner, J.).  Nevertheless, the district

court predicted that the Pennsylvania Supreme Court would "rule consistently with

its prior precedent and hold that a duty of good faith and fair dealing is inherent in

every contract."  Id.  (emphasis added).  In making this prediction, the court

pointed to multiple state decisions as well as federal decisions which ruled that

every contract in Pennsylvania imposed on each party a duty of good faith and fair

dealing.  Id. (citing Donahue v. Federal Express Corporation, 753 A.2d 238

(Pa.Super. 2000); Liazis v. Kosta, Inc., 618 A.2d 450 (Pa. Super. 1992); Fraser v.

Nationwide Mutual Insurance Company, 135 F.Supp.2d 623 (E.D.Pa. 2001)).

Furthermore, the court noted that the Pennsylvania Supreme Court had expressly

adopted Section 205 of the Restatement (Second) of Contracts, which states that

"[e]very contract imposes on each party a duty of good faith and fair dealing in its

performance and enforcement."  Id. (citing Bethlehem Steel Corporation v. Litton

Industries, Inc., 507 Pa. 88, 125, 488 A.2d 581, 600 (1985)).  Because we agree

with the district court's thorough analysis in Bedrock, we rule that Pennsylvania

law imposes a duty of good faith and fair dealing in every contract.

Thus, having rejected all of defendant's arguments regarding the dismissal

of plaintiffs' breach of contract claim, we will deny defendant's motion to dismiss

to the extent it seeks to dismiss plaintiffs' breach of contract claim.

## C.  Gist of the Action Doctrine

Defendant argues that plaintiffs' claims for negligent misrepresentation,

negligence, and breach of fiduciary duty, are barred by Pennsylvania's Gist of the

Action Doctrine.  (Rec. Doc. No. 5-7. at 15.)  Specifically, defendant argues that

these claims are rooted entirely in the contract between plaintiffs and defendant

and are barred by the doctrine.  (Id. at 15-16.)  Plaintiffs, on the other hand, argue

that whether these claims are barred is a factually intensive inquiry and should not

be decided on a motion to dismiss.  (Rec. Doc. No. 19-4, at 30.)

Although not expressly recognized by the Pennsylvania Supreme Court, the

Third Circuit has predicted that the Supreme Court would adopt the "Gist of the

Action" doctrine as set out by Pennsylvania's Superior Court.  Williams v. Hilton

Group PLC, 93 Fed.Appx. 384, 385 (3d Cir. 2004).  This doctrine is designed to

maintain a distinction between breach of contract claims and tort claims by barring

plaintiffs from recasting breach of contract claims as tort claims.  eToll, Inc. v.

Elias/Savion Advertising, Inc., 811 A.2d 10, 14 (Pa. Super. Ct. 2002).  The reason

for the distinction is because a tort claim is created by a breach of a duty imposed

as a matter of social policy, while a contract claim is created by a breach of a duty

imposed by mutual agreement.  Id.  The critical question is whether the tort claims

are "inextricably intertwined" with the contract claims or whether the tort claims

are "tangential" to the contract.  Id. at 21.  Thus, the doctrine cannot be evaded by

merely pleading that the defendant acted negligently, recklessly, or intentionally if

the gravamen of the claim is that the defendant failed to perform a promise.

Sunquest Information Systems, Inc. v. Dean Witter Reynolds, Inc., 40 F.Supp.2d

644, 651 (W.D.Pa. 1999) (citing Factory Market, Inc. v. Schuller Int'l, Inc., 987

F.Supp. 387, 394 (E.D.Pa. 1997).

We agree with plaintiffs that it is too early to determine whether plaintiffs'

tort claims are "inextricably intertwined" with the contract claim.  As plaintiffs

correctly point out, such a determination can be factually intensive and cannot be

made on a motion to dismiss.  Haymond V. Lundy, 2000 WL 804432, at * 8

(E.D.Pa. June 22, 2000) (Shapiro, J.) (citations omitted).  Furthermore, although

plaintiff's complaint does not specify exactly what protocols or statutes defendant

allegedly violated, plaintiffs' complaint does allege that defendant's actions

violated "standard banking protocols" and "state statute[s]" and has thus alleged a

breach of a duty that was not imposed by the contract.  (Rec. Doc. No. 1, ¶¶ 28, 29,

32.)  Therefore, we will deny defendant's motion to dismiss plaintiffs' negligent

misrepresentation, negligence, and breach of fiduciary duty claims to the extent it

seeks dismissal based on the Gist of the Action Doctrine.

D.  Negligent Misrepresentation Claim

Defendant argues that plaintiff's claim of negligent misrepresentation fails

because plaintiffs do not claim that defendant made any incorrect representation of

a material fact.  (Rec. Doc. No. 5-7, at 17.)  Furthermore, defendant cites to the

Restatement (Second) of Torts which states that negligent misrepresentation

involves "suppl[ying] false information for the guidance of others in their business

transactions."  (Id.)  Defendant argues that it is not in the business of supplying

information to others for guidance in business transactions but is a commercial

bank that lends money.  (Id. at 18.)

A claim of negligent misrepresentation requires: 1) a misrepresentation of a

material fact; 2) that the representor either knew of the misrepresentation, made the

misrepresentation without knowledge as to its truth or falsity, or made the

representation under circumstances in which he or she ought to have known of its

falsity; 3) that the representor intended the representation to induce another to act

on it; and 4) that injury resulted to the party acting in justifiable reliance on the

misrepresentation.  Gibbs v. Ernst, 647 A.2d 882, 890 (Pa. 1994).

Despite defendant's arguments to the contrary, it is clear that plaintiffs have

stated a claim for negligent misrepresentation.  Plaintiffs have alleged that

defendant provided them with inaccurate audit information.  (Rec. Doc. No. 1, ¶¶

50-51.)  Furthermore, plaintiffs allege that defendant acted negligently in providing

this inaccurate information (i.e. ought to have known of its falsity).  (Id. ¶¶ 51-52,

54.)  Plaintiffs also allege that defendant knew plaintiff would rely on this

information.  (Id. ¶ 54.)  Finally, plaintiffs allege that they justifiably relied on this information and were damaged by doing so.  (Id. ¶¶ 53, 56.)  We are satisfied that plaintiffs' allegations satisfy all the elements of a claim for negligent misrepresentation under Pennsylvania law.  Finally, with respect to defendant's argument that it is not in the business of supplying information to others for guidance in business transactions, we do not find this argument particularly relevant.  As we just mentioned, plaintiffs alleged that defendant negligently provided them with inaccurate information, and we assume that this is true for the purposes of a motion to dismiss.  Therefore, we will deny defendant's motion to dismiss to the extent it seeks to dismiss plaintiffs' claim of negligent misrepresentation.

## E.  Negligence Claim

Defendant argues that it was not negligent because it did not breach a duty imposed by law.  (Rec. Doc. No. 5-7, at 18.)  Specifically, defendant argues that as a lender, it had no duty to plaintiffs to insure that they did not borrow more money than the contract allowed.  (Id.)

In order to establish a claim for negligence under Pennsylvania law, plaintiffs must prove: (1) a duty owed to plaintiff by defendant; (2) a breach of that duty; (3) a causal connection between defendant's breach and the resulting injury;

and (4) injury suffered by plaintiff.  Estate of Zimmerman v. Southeastern Pennsylvania Transp. Authority, 168 F.3d 680, 684 (3d Cir. 1999).  In order to owe a duty, a defendant must have "anticipated and foreseen the likelihood of harm to the [plaintiff] from his act."  Dahlstrom v. Shrum, 368 Pa. 423, 425, 84 A.2d 289, 290-91 (1951) (citations omitted).

To the extent that the duty plaintiffs rely upon is a duty imposed by the contract, it is clear that such a negligence claim would be barred by the "Gist of the Action" Doctrine.  Nevertheless, as we have previously discussed, in addition to alleging breaches of portions of the contract, plaintiffs' complaint alleges that defendant's actions violated "standard banking protocols" and "state statute[s]." (Rec. Doc. No. 1, ¶¶ 28, 29, 32.)  Specifically, plaintiffs have alleged that it was a violation of written banking protocols to provide loans "by phone, without any written requests or documentation for the vehicles financed." (Id. ¶ 29.)  Similarly, plaintiffs alleged that it was a violation of banking protocol and state statute to provide financing in excess of the limits placed in the contract.  (Id. ¶ 32.)  In other words, plaintiffs have alleged that when a lending institution provides floor-plan financing to an automobile dealer, it has certain duties imposed not by the contract, but by law, to require loans to be done by written request and with documentation of the vehicles financed and to not provide financing in excess of the certain limits.

18

Therefore, we find that defendant did owe plaintiffs certain duties that were not imposed by the contract and will therefore deny defendant's motion to dismiss to the extent it seeks to dismiss plaintiffs' negligence claim.

F.  Breach of Fiduciary Duty

Defendant argues that it could not have breached a fiduciary duty because it was not a fiduciary of the plaintiffs under Pennsylvania law.  (Rec. Doc. No. 5-7, at 19-20.)  Specifically, defendant alleges that a lender only becomes the fiduciary of a borrower when it assumes control over the borrower, which it did not do in the instant case.  (Id. at 20.)

Under Pennsylvania law, a fiduciary duty exists when one occupies towards another a position of advisor or counselor as reasonably to inspire confidence that he or she will act in good faith for the other's interest.  Silver v. Silver, 219 A.2d 659, 662 (Pa. 1966).  Furthermore, there must be "an overmastering of dominance on one side, or weakness, dependence or justifiable trust on the other."   In re Clark's Estate, 359 A.2d 777, 781 (Pa. 1976).  Yet, a lender generally does not owe a fiduciary duty to a borrower.  Temp-Way Corp. V. Continental Bank, 139 B.R. 299, 318 (E.D.Pa. 1992) (citing Grace v. Moll, 132 A. 171, 171-72 (Pa. 1926)).  This is because there is a presumption that the lender and borrower have conducted business at arms-length.  Id. (citing Frowen v. Blank, 425 A.2d 412, 416 (Pa.

19

1981).  However, a lender may assume a fiduciary duty to a borrower if he or she

gains substantial control over a borrower's business affairs, such as by becoming

involved in the day-to-day business and affairs of the borrower, or by compelling

the borrower to engage in unusual transactions.  Id. (citations omitted).  Yet, the

mere monitoring of the borrower's operations and the proffering of management

advice by lenders without more is not enough to create a fiduciary duty.  Id.

(citations omitted).

As plaintiffs correctly point out, the Eastern District of Pennsylvania faced

an identical question to ours in Brandow Chrysler Jeep Co. v. DataScan

Technologies.  2007 WL 1725255, at * 7-8 (E.D.Pa. June 13, 2007) (O'Neill, J.).

In that case, the district court determined that the plaintiff had sufficiently stated a

claim upon which relief can be granted when it alleged that a floor plan financer

had breached its fiduciary duty by failing to properly conduct floor plan audits.  Id.

The court pointed to the allegations in the complaint that the plaintiff had relied on

defendant's pretense of expertise in finding that a fiduciary duty may have existed.

Id.  Like the plaintiff in Brandow, plaintiffs in the instant case have alleged that

defendant maintained superior knowledge of floor plan financing and auditing

practices.  (Rec. Doc. No. 1, ¶ 67.)  Because we agree with the court's analysis in

Brandow and find that the allegations in the instant case are identical to the

20

allegations in that case, we will deny defendant's motion to dismiss to the extent it seeks to dismiss plaintiff's claim for breach of fiduciary duty.

G.  Aiding and Abetting Breach of Fiduciary Duty

Defendant argues that the only proof of aiding and abetting is a hearsay statement in which Smith stated that the vice-president of defendant told her to report false inventory numbers on financial statements.  (Rec. Doc. No. 5-7, at 21.) Furthermore, defendant argues that the vice-president has explicitly denied making this statement in his affidavit.  (Id.)  As we have mentioned, to the extent defendant is seeking summary judgment, the motion is premature.  There has been no formal discovery in this case and we will not allow defendant to seek summary judgment against plaintiffs when plaintiffs may have not had the opportunity to discover evidence necessary to defend against defendant's motion.  Thus, because defendant does not argue that plaintiffs have failed to state a claim for aiding and abetting a breach of a fiduciary duty, and its only argument appears to be that there is no disputed material fact that defendant did not aid and abet a breach of fiduciary duty, we will reject defendant's arguments for dismissal of this claim.

**CONCLUSION:**

For the reasons stated above, we find that plaintiffs have stated a claim upon which relief can be granted with respect to each claim presented in the complaint. Therefore, we will deny defendant's motion to dismiss.  Additionally, we will deny defendant's request for a hearing.


     ___s/ James F. McClure, Jr._____
     James F. McClure, Jr.
     United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CLARK MOTOR COMPANY, INC.  :
ROBERT W. CLARK, DAVID        :
CLARK                                       :
                                                    :
                    Plaintiffs,            :                No. 4:07-CV-856
                                                    :
          v.                                   :                (Judge McClure)
                                                    :
MANUFACTURERS AND          :
TRADERS TRUST, CO.,             :
                                                    :
                                                    :
                    Defendant.          :

**O R D E R**

July 26, 2007


In accordance with the accompanying Memorandum, **IT IS HEREBY**

**ORDERED THAT:**

1.      Defendant's "Motion to Dismiss or for Summary Judgment" is

        DENIED.  (Rec. Doc. No. 9.)

2.      Defendant's "Request for Hearing" is DENIED.  (Rec. Doc. No. 11.)



        s/ James F. McClure, Jr.
        James F. McClure, Jr.
        United States District Judge


23